IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| KATHY STEELE, Administrator of the Estate of Robert David Steele<br><br>-and-<br><br>EARTH INTELLIGENCE NETWORK<br><br>　　　Plaintiffs,<br><br>v.<br><br>JASON GOODMAN<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Case No. 3:21-cv-573-JAG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs, Kathy Steele, Administrator of the Estate of Robert David Steele, Deceased, and Earth Intelligence Network ("Plaintiffs"), by counsel, pursuant to Local Civil Rule 7(F), respectfully submit this Memorandum in Opposition to the motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [*ECF No. 26*] filed by defendant, Jason Goodman ("Goodman").

## I. INTRODUCTION

This is an action for defamation, business conspiracy, and unauthorized use of name and picture in violation of § 8.01-40 of the Virginia Code. The case involves over fifty (50) videos produced and uploaded to YouTube by Goodman, in which Goodman and others falsely accuse Robert David Steele ("Steele") and Earth Intelligence Network

1

("EIN") of multiple crimes and otherwise repeatedly insult and hold Steele and EIN up to scorn, ridicule and contempt. On November 26, 2021, with leave of Court, Plaintiffs filed an amended complaint. [*ECF No. 25 ("Am. Compl.")*]. Plaintiffs seek money damages as a result of Goodman's actions. On December 17, 2021, Goodman, acting *pro se*, filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6). Within the body of his memorandum in support of motion pursuant to Rule 12(b)(6) is a request to dismiss the case for lack of personal jurisdiction.

The matter is now before the Court on Goodman's motion to dismiss pursuant to Rule 12(b)(6). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Goodman does not challenge venue, and has, therefore, waived this defense. FED. R. CIV. PRO. 12(h)(1). For the reasons stated below, Goodman's motion should be denied.

## II. DISCUSSION

**A.** *Plaintiffs' Amended Complaint Is Not An Abuse Of Process*

Goodman's main argument is that he feels this matter was brought for an improper purpose to harass him and burden him with the "cost and complexity of litigation". Respectfully, Mr. Goodman is wrong. This matter was brought and is being pursued with the sincere intent to vindicate legal rights through the judicial process.

**B.** *EIN Is A Legally Entity*

Although Goodman claims in his memorandum in support [*ECF No. 27, p. 2*] that "EIN is not a valid legal entity", Goodman raises unsupported factual matters that are outside the amended complaint. Even if the factual premise of Goodman's position is accurate, he offers no evidence and no legal authority for his argument that EIN "cannot

sue or be sued under the laws by which it was organized." This aspect of his motion should be denied without prejudice.

C. *Goodman Waived The Defense of Personal Jurisdiction*

"A party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from a motion in the circumstances described in Rule 12(g)(2)," which "requires that a defendant make all challenges under Rule 12 in the same motion." FED. R. CIV. PRO. 12(h)(1)(A); *Amazon Web Servs., Inc. v. Glob. Equity Mgmt. S.A.*, 2017 WL 4052381, at * 5 (E.D. Va. 2017) (citing FED. R. CIV. PRO. 12(g)(2)).[1]

Goodman did not file a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). He has waived the defense.

D. *The Court Has Specific Personal Jurisdiction Over Goodman*

When, as here, "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *id. Gilmore v. Jones*, 370 F.Supp.3d 630, 650 (W.D Va. 2019) (quoting *Universal Leather, LLC v. Koro AR, SA*, 773 F.3d 553, 558 (4th Cir. 2014)). In reviewing the matter, the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the

---

[1] Rule 12(g)(2) contains two exceptions. FED. R. CIV. PRO. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3) ..."). First, Rule 12(h)(2) allows parties to raise failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b) or to state a legal defense to a claim in additional limited circumstances. FED. R. CIV. PRO. 12(h)(2). Second, Rule 12(h)(3) allows parties to challenge subject-matter jurisdiction at any time under Rule 12(b)(1). FED. R. CIV. PRO. 12(h)(3). Neither exception applies here.

most favorable inferences for the existence of jurisdiction. *Sneha Media & Entm't, LLC v. Associated Broad. Co. P LTD*, 911 F.3d 192, 196 (4th Cir. 2018); *New Wellington Fin. Corp. v. Flagship Resort Dev. Co.*, 416 F.3d 290, 294 (4th Cir. 2005) (citations and quotations omitted). "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, 2010 WL 1225620, at * 1 (E.D. Va. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).

For a Court to "assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). "Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). "A Virginia court thus has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Id.* "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in the state 'does not offend the traditional notions of fair play and substantial justice.'" *Carefirst*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The standard for determining whether personal jurisdiction over a

nonresident defendant exists varies "depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Id.* If a defendant's contacts form the basis for the suit, those contacts may establish "specific jurisdiction." *Id.* "If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent but unrelated contacts with the state." *Id.*

### 1. *Specific Personal Jurisdiction*

Specific personal jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). To warrant the exercise of specific personal jurisdiction, a "defendant must have purposefully established minimum contacts in the forum State such that [he] should reasonably anticipate being haled into court there." *Perdue Food, LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016). The Fourth Circuit employs "a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant" comports with due process, examining "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather*, 773 F.3d at 559. In deciding whether it can exercise specific personal jurisdiction over a defendant, "a court must weigh the totality of the facts before it." *Perdue Food*, 814 F.3d at 189. The Court "should not merely … count [a defendant's] contacts [with the forum state] and quantitatively compare this case to other preceding cases." *Carefirst*, 334 F.3d at 397. "Even a single

contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of fair play and substantial justice is not thereby offended." *Id.*

In assessing whether Goodman's contacts with Virginia support specific personal jurisdiction, three decisions are particularly salient. In *Calder v. Jones*, 465 U.S. 783, 788-789 (1984), the United States Supreme Court held that a California court could exercise personal jurisdiction over two Florida newspapermen in a libel action arising out of a *National Inquirer* article written in Florida but "concern[ing] the California activities" of Shirley Jones, a Hollywood actress and California resident. The Court noted that the "article was drawn from California sources, and the brunt of the harm, in terms both of [Jones's] emotional distress and the injury to her professional reputation, was suffered in California." *Id.* Because "California [was] the focal point both of the story and of the harm suffered," jurisdiction was "proper in California based on the 'effects' of [defendants'] Florida conduct in California." *Id.* at 789.

The Fourth Circuit has utilized the *Calder* "effects" test in cases involving online activity in two important decisions. In *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002), the Fourth Circuit held that "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." Applying this standard, the Fourth Circuit found that a Maryland court could not exercise specific personal jurisdiction over a Georgia-based Internet service provider (ISP) whose only

role in the alleged trademark infringement was "provid[ing] bandwidth" that allowed another company "to create a website and send information over the Internet." *Id.* at 714-715 (noting that the ISP-defendant "did not select or knowingly transmit infringing photographs" or "direct its electronic activity specifically at any target in Maryland"). In *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002), the Fourth Circuit refined the *ALS Scan* test for cases where "the Internet activity" at issue involves "the posting of news articles on a website." In such cases, the test "works more smoothly when parts one and two" are "considered together," such that courts ask "whether the [defendants] manifested an intent to direct their website content ... to a Virginia audience." *Id.* The fact that a defendant's website can "be accessed anywhere, including Virginia, does not by itself demonstrate that the [defendant was] intentionally directing their website content to a Virginia audience." *Id.* "Something more than posting and accessibility is needed"—the "general thrust and content" of the online publications must "manifest an intent to target and focus on Virginia readers." *Id.* Applying this standard in *Young*, the Fourth Circuit determined that a Virginia court could not exercise specific personal jurisdiction over Connecticut newspapers that published online articles commenting on conditions at a Virginia prison and allegedly defaming Young, a warden at the prison, in the midst of reporting on the "Connecticut prison transfer policy." *Id.* at 263-264. The Fourth Circuit reasoned that (1) the "content of the websites [was] decidedly local, and neither newspaper's website contain[ed] advertisements aimed at a Virginia audience," and (2) "Connecticut, not Virginia, was the focal point of the articles." *Young*, 315 F.3d at 263-264.

Here, as in *Calder*, Virginia is the focal point both of Goodman's defamatory statements and the harm suffered. Goodman and his agents were physically present in Virginia on multiple occasions in connection with the production of YouTube videos, including several at issue. After Goodman perpetrated the "Dirty Bomb" hoax, and Steele notified him that he would no longer appear on Goodman's shows, Goodman retaliated against Steele. In video after video, Goodman knowingly targeted a Virginia citizen and a Virginia non-profit, and engaged in a persistent, continuous and ongoing course of defamation that injured Steele and EIN in Virginia. Goodman encouraged viewers in Virginia to demand a return of their donations to Plaintiffs' campaign, #UNRIG. In one video, Goodman and his co-conspirator, Holmes, doxed[2] Steele's home address in Oakton, Virginia, to viewers and subscribers and used Google Maps to show a photo of Steele's home. The general thrust and content of Goodman's videos and tweets – which he produced, directed, spoke in, edited and published on platforms he operates – manifests an intent to target and focus on Plaintiffs. As in *Gilmore*, the focal point of Goodman's accusations of "felony charity fraud" and theft was a live-stream event that occurred in Oakton, Virginia, and a Virginia citizen (Steele). *Gilmore*, 370 F.Supp.3d at 655 ("the 'focal point' of Creighton's publications was a Virginia event and citizen, making his publications of particular interest to a Virginia audience."). Finally, the brunt of the harm, in terms of both insult, mental suffering and injury to Steele and EIN's business and reputations, was suffered in Virginia, where Steele lived and worked and where EIN is headquartered.

---

[2] "Dox" means to publicly identify or publish private information about (someone) especially as a form of punishment or revenge. [https://www.merriam-webster.com/dictionary/dox].

Plaintiffs easily make a prima facie showing of personal jurisdiction. *See Blue Ridge Bank, Inc. v. Veribanc*, 755 F.2d 371, 374 (4th Cir. 1985) (the defendant "obviously knew that Dorfman was going to write an article that included the allegedly libelous information about Blue Ridge and that the article could find its way into the Commonwealth of Virginia.  By requiring Dorfman to reveal his source of financial information Veribanc obviously expected to receive additional orders from customers who read the information in the article.  Because of this expectation Veribanc could reasonably expect to be hailed into court, on an allegation of false information supplied to Dorfman by Veribanc, in any forum in which Dorfman's article appeared … Veribanc's fifty-seven contacts with its subscribers in Virginia add strength to the exercise of personal jurisdiction over Veribanc"); *Gubarev v. BuzzFeed*, 253 F.Supp.3d 1149, 1159 (S.D. Fla. 2017) ("When Defendants published their unverified Dossier via their website and mobile application, Defendants knew it would be viewed around the world, and given the international scope of its contents, should have anticipated that the effects of the publication might be felt in different fora, including the fora where Plaintiffs are located.  Accordingly, Defendants cannot claim surprise at being haled into court in the Southern District of Florida.").

Litigating this case in Virginia will not impose any burden on Goodman.  It is beyond dispute that the Commonwealth of Virginia has a significant interest in exercising jurisdiction over those who commit torts (defamation, conspiracy and misappropriation of name and picture) within its territory. *Compare, e.g., Keeton*, 465 U.S. at 776 ("it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State … New Hampshire may rightly employ its libel laws to

discourage the deception of its citizens."). Lastly, litigating the case in Virginia will help prevent delay for Plaintiffs and ensure that the dispute is resolved in a fair and efficient way. The exercise of specific personal jurisdiction over Goodman is constitutionally reasonable.

E.   **COUNT I - Defamation**

   1.   *Material Falsity*

In their amended complaint, Plaintiffs repeatedly allege that Goodman's statements are false. [*Am. Compl.*, ¶¶ *18, 19, 20, 22, 23, 29*]. Goodman disputes these allegations. He claims that the statements in his videos about "felony charity fraud" are "true or substantially true."

The Court cannot resolve this dispute on a motion to dismiss.

   2.   *Statute of Limitations*

Section 8.01-229(E)(1) provides that if an action is commenced within the prescribed limitation period "and for any cause abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period."

Steele and EIN originally filed suit against Goodman on September 1, 2017. [*Steele v. Goodman*, Case 3:17-cv-601-MHL (ECF No. 1)]. Plaintiffs' action for defamation was commenced well within the applicable one-year limitation period. Plaintiffs' original suit included the statements alleged in paragraph 18 of Plaintiffs' amended complaint filed in this case. Goodman continued to defame Plaintiffs after September 1, 2017. Plaintiffs sought leave of Court in Case 3:17-cv-601-MHL to file an

amended complaint. The Court granted Plaintiffs' motion. On April 13, 2018, Plaintiffs filed an amended complaint. [*See* Case 3:17-cv-601-MHL (ECF No. 39)]. Plaintiffs' action as to the additional defamatory statements was commenced well within the applicable one-year limitation period. Plaintiffs' amended complaint in Case 3:17-cv-601-MHL included the statements alleged in paragraphs 20, 22 and 23 of Plaintiffs' amended complaint filed in this action.

The statements made by Goodman in 2017 and 2018 are all within the statute of limitations.

**F.**      **COUNT II – Business Conspiracy**

    **1.**      **Statute of Limitations**

Statutory or business conspiracy claims under § 18.2-499 and § 18.2-500 are subject to a five-year statute of limitations. *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 543 (4th Cir. 1997) ("The statute of limitations applicable to the conspiracy claim is five years."); *EER Systems, Inc. v. Armfield Harrison & Thomas, Inc.*, 1999 WL 1499532, at * 9 (Fairfax Cir. 1999) ("One federal court has held that a five year limitations period applies to actions under those Code sections. *Federated Graphics Co. v. Napotnick*, 424 F.Supp. 291, 293 (E.D. Va. 1976) (Merhige, J.) ("An injury to one's business is clearly an injury to one's property interest).

Goodman claims that Plaintiffs' underlying claim of conspiracy is deficient "as the statute of limitations has run, therefore the Business Conspiracy claim cannot survive." Goodman's position is incorrect.

    **2.**      **Denial of Responsibility**

Goodman does not and cannot dispute that EIN has alleged a claim of Business

11

Conspiracy. *See Steele v. Goodman*, 382 F.Supp.3d 403, 424 (E.D. Va. 2019) ("Plaintiffs adequately plead (1) the existence of an agreement between Negron and Goodman (2) to defame Plaintiffs, resulting in the production and publication of allegedly defamatory videos that (3) caused Plaintiffs damages. Negron's participation in the production and publication of the videos constitutes an overt act to satisfy the fourth and final prong of the common law conspiracy claim"); *Harrell*, 923 F.Supp.2d at 826 ("Even if the heightened standards of Rule 9(b) applied [to a claim of civil conspiracy], the Court would find the allegations here to be sufficient. Construed in Defendants' favor, the Counterclaim alleges that Plaintiffs purchased the Strawberry Hill Races Mark on May 24, 2012, and within one week formed an agreement to tortiously injure Defendants").

In section VI of his memorandum, Goodman denies that he is responsible for the actions of Negron and Holmes. EIN disputes Goodman's allegations. Goodman's assertions do not provide a basis to dismiss Count II of the amended complaint pursuant to Rule 12(b)(6).

**G.** **COUNT III – *Unauthorized Use Of Name And Picture***

Section 8.01-40 of the Virginia Code provides that any person whose name or picture is used "without having first obtained the written consent of such person … for advertising purposes or for the purposes of trade," such person "may maintain a suit in equity against the person … so using such person's name … or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use. And if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by this chapter, the jury, in its discretion, may award punitive damages."

As alleged in Count III of Plaintiffs amended complaint, Goodman used Steele's name and picture without consent for advertising purposes and to sell merchandise on the Internet.

Goodman claims that he used Steele's name and image "in the course of news reporting and in presenting true and correct facts pertaining to criminal activity and other actions by Plaintiff." [*Goodman Mem., p. 7*]. Goodman also claims that his commercial use of Steele's image "concerns parody images created by the Defendant" that are "expressly protected speech under section 107 of the copyright act." [*Id.*]. Finally, Goodman argues that his commercial use of Steele's image was "de minimis". [*Id.*].

1. *Rule 12(b)(6) Standard*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F,2d 8943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a plaintiff's complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To this end, a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted). A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In ruling on a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a

13

plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff, with all reasonable inferences being drawn in plaintiff's favor. *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, (4th Cir. 2011). A 12(b)(6) motion should only be granted if, "after accepting all well-pleaded allegations ... as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling [her] to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### 2. *Goodman Used Plaintiff's Picture For Advertising Purpose And Trade*

It is well-established that if a name or likeness is used without consent in connection with matters that are "newsworthy" or of "public interest," § 8.01-40 does not apply. *Wiest v. E-Fense, Inc.*, 356 F.Supp.2d 604, 611 (E.D. Va. 2005) (citing *Williams v. Newsweek, Inc.*, 63 F.Supp.2d 734 (E.D. Va. 1999), *aff'd*, 202 F.3d 262 (4th Cir. 1999)); *see id WJLA-TV v. Levin*, 264 Va. 140, 161, 564 S.E.2d 383 (2002) ("Dr. Levin asserts that the promotional announcements were intended, in part, to entice the public to view the WJLA news broadcast in order to increase the station's ratings during a critical 'sweeps' period and, thus, potentially increase future advertising revenue. While this may be so, it cannot reasonably be disputed that the principal purpose of WJLA's announcements was to promote a report 'of [a] newsworthy event[] or matter[] of public interest.' It is a newsworthy event and a matter of public interest when a physician is accused by his patients of sexually assaulting them. Accordingly, we hold that the use of Dr. Levin's image in WJLA's promotional announcements was not an unauthorized use prohibited under Code § 8.01-40.").

Plaintiffs allege that "Goodman used Robert [Steele]'s name and picture to generate business for CSTT (*i.e., merchandise sales, donations, increased subscribership, and monetization of CSTT's YouTube Channel)*. In each video, Goodman solicits financial contributions and subscriptions." [*Am. Compl.*, ¶ *43*]. At this stage, Plaintiffs' allegations that Goodman used Steele's name and picture for advertising purposes must be accepted as true. *See, e.g., Cornwell v. Sachs*, 99 F.Supp.2d 695, 712-713 (E.D. Va. 2000) ("Sachs' attempt to convert the public interest/newsworthiness exception into a shield for his shameless violation of Virginia's privacy statute is completely lacking in merit … In summary, it would pervert the public interest/newsworthiness exception to apply it so as to protect the publication of a 'scandal' which was wholly fabricated by the Defendant."). Moreover, Goodman's use of Steele's image to sell merchandise clearly goes further than mere "news reporting".

    2.    <u>*Parody*</u>

Section 107 of the Copyright Act provides that the "fair use of a copyrighted work … for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." In determining whether the use made of a work in any particular case is a fair use, the factors to be considered shall include "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."

Plaintiffs could find only one Virginia case that discussed the concept of "parody" in the context of a claim under § 8.01-40: *Falwell v. Flynt*, 797 F.2d 1270 (4th Cir. 1986). Significantly, *Falwell* went to the jury. At the close of the evidence, the district court dismissed Falwell's action for invasion of privacy pursuant to § 8.01-40 on the grounds that the ad parody which appeared in Hustler did not constitute a use of Falwell's name and likeness "for purposes of trade" within the meaning of the statute. Falwell appealed alleging that the district court erred in this ruling. The Fourth Circuit disagreed. The Fourth Circuit ruled that because "the jury found that the parody in the instant case was not reasonably believable and because it contained a disclaimer, publication of the parody did not constitute a use of Falwell's name and likeness for purposes of trade." 797 F.3d at 1278.

While "parody, like other comment or criticism, may claim fair use under § 107", *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994), whether Goodman's commercial use of Plaintiff's picture to sell merchandise constitutes "fair use" is an affirmative defense that cannot be resolved on a motion to dismiss. *Id.* at 581 ("The Act has no hint of an evidentiary preference for parodists over their victims, and no workable presumption for parody could take account of the fact that parody often shades into satire when society is lampooned through its creative artifacts, or that a work may contain both parodic and nonparodic elements. Accordingly, parody, like any other use, has to work its way through the relevant factors, and be judged case by case, in light of the ends of the copyright law"). Goodman's motion to dismiss COUNT III should be denied.

16

### 3. *Goodman's Commercial Use*

In *Town and Country Properties, Inc. v. Riggins*, the Virginia Supreme Court squarely affirmed that "one holds a property interest in one's name and likeness." 249 Va. 387, 397, 457 S.E.2d 356 (1995) (citing *Lavery v. Automation Management Consultants, Inc.*, 234 Va. 145, 154, 360 S.E.2d 336 (1987)). The Court affirmed a jury verdict in favor of John Riggins, a public figure, on Riggins' claims that defendant had used his name on a promotional flyer without consent.

Goodman's argument that his commercial use of Steele's image was "de minimis" is not a defense to a claim under § 8.01-40. This part of his motion to dismiss should be denied without more.

### CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully request the Court to deny Goodman's motion to dismiss.

DATED: December 31, 2021

Signature of Counsel on Next Page

        KATHY STEELE, Administrator of the Estate of
          Robert David Steele
        EARTH INTELLIGENCE NETWORK


By: */s/ Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:   (804) 501-8272
      Facsimile:    (202) 318-4098
      Email:       stevenbiss@earthlink.net

*Counsel for the Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2021 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel of record all interested parties receiving notices via CM/ECF. A copy was also emailed in PDF to Goodman.


By: */s/ Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:   (804) 501-8272
      Facsimile:    (202) 318-4098
      Email:       stevenbiss@earthlink.net

*Counsel for the Plaintiffs*