IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KATHY STEELE ADMINISTRATOR of the
ESTATE OF ROBERT DAVID STEELE
& EARTH INTELLIGENCE NETWORK,
            Plaintiffs,

v.                                                    Civil Action No. 3:21cv573

JASON GOODMAN,
            Defendant.

**MEMORANDUM OPINION**

The plaintiffs, Kathy Steele and Earth Intelligence Network ("EIN"), sue the defendant,

Jason Goodman, for defamation (Claim One), business conspiracy (Claim Two), and

unauthorized use of Robert Steele's ("Steele") name and picture pursuant to Va. Code § 8.01-40

(Claim Three).[1]  Goodman moves to dismiss the plaintiffs' amended complaint. (ECF No. 26.)[2]

Goodman argues that the Court should dismiss the entire complaint because (1) the Court lacks

personal jurisdiction over him, and (2) the plaintiffs have committed an abuse of process by

filing multiple lawsuits against him.[3]  (ECF No. 27, at 4–5.)  Further, Goodman requests that the

Court sanction the plaintiffs.  (*Id.* at 7.)

---

[1] Following Steele's death on August 28, 2021, his wife, Kathy Steele, and EIN moved to substitute Kathy Steele as a plaintiff in this action. (ECF No. 14.) On November 9, 2021, Kathy Steele was named the administrator of her late husband's estate. (ECF No. 23-1.) The Court granted the motion to substitute on November 16, 2021. (ECF No. 24.) *See* Va. Code Ann. § 8.01-25.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. Unless otherwise specified, ECF Numbers refer to the record of Civil Action No. 3:21cv573.

[3] Goodman also argues generally that EIN is no longer "a valid legal entity." (ECF No. 27, at 2.) According to the amended complaint, EIN is "a Virginia not-for-profit, 501(c)(3) corporation founded by [Steele] in 2006." (ECF No. 25 ¶ 3.) Goodman asserts that "Steele was the sole director of EIN," that EIN had no board of directors, and that "Steele's death render[ed] EIN a legal non-entity that cannot sue or be sued under the laws by which it is organized." (ECF

Goodman also moves to dismiss the three claims against him for various substantive reasons. Goodman asks the Court to dismiss Claim One because (1) he made truthful statements about Steele, and (2) the statute of limitations for defamation has expired. (*Id.* at 5.) Goodman asks the Court to dismiss Claim Two because (1) the plaintiffs do not plausibly plead a claim for business conspiracy, (2) he never conspired with others to injure Steele's reputation and business, and (3) the statute of limitations for business conspiracy has expired. (*Id.* at 5–6.) As to Claim Three, Goodman asserts that the First Amendment and "section 107 of the [C]opyright [A]ct" protect his use of Steele's name and image. (*Id.* at 6–7.)

Although the Court has serious doubts about the ultimate success of the plaintiffs' claims, it will deny Goodman's motion as to Claims One and Two. Because the Court finds that the doctored images of Steele that Goodman created are parody images protected by the First Amendment, the Court will grant the motion as to Claim Three.

## I. BACKGROUND

### A. Facts Alleged in the Amended Complaint

Goodman, a citizen of New York, "owns, maintains[,] and operates multiple Internet and social media properties, including YouTube channels and a Twitter account." (ECF No. 25 ¶ 4.) "The name of Goodman's social media properties is 'Crowdsource The Truth' ('CSTT')." (*Id.*) On June 13, 2017, Steele[4]—EIN's founder—participated in an interview in Oakton, Virginia,

---

No. 27, at 2–3.) The plaintiffs contend, however, that EIN remains "active and in good standing." (ECF No. 25 ¶ 3.) Because Goodman fails to cite any law or provide any evidence in support of his contention, the Court will allow EIN to remain as a plaintiff in this case at this time. *See* Fed. R. Civ. P. 21.

[4] The complaint provides a litany of Steele's purported accomplishments. The Court will not recite them here, save to note that prior to his death, Steele—through EIN—ran an "educational campaign" called #UNRIG, with the stated purpose of communicating "to all

with an "agent" of CSTT, George Webb. (*Id.* ¶¶ 3, 9.)  During the interview, Steele discussed "his views on 9/11, pedophilia[,] and the purpose of #UNRIG."  (*Id.* ¶ 10.)  Goodman and another CSTT associate Patricia Negron live-streamed the interview, and Goodman published it to his YouTube channel.  (*Id.* ¶ 9.)  During the live stream, Goodman encouraged his viewers to donate to the #UNRIG Indiegogo campaign.  (*Id.* ¶ 10.)  That day, EIN received $9,827.01 in donations from 175 donors.[5]  (*Id.*)  Steele planned to participate in another interview with Goodman and Negron on June 15, 2017.  (*Id.* ¶ 16.)

On June 14, 2017, however, Goodman published a video containing false information about a potential "dirty bomb" aboard "transoceanic container ship, Maersk Memphis."  (*Id.* ¶ 14.)  Goodman "encouraged the 'Crowdsource community' to spring into action and alert the United States Coast Guard" of the threat by "[c]all[ing] the port authority."  (*Id.* (first alteration in original).)  The "terminal at the Port of Charleston, South Carolina, [was] shut down" because of Goodman's video, and the Federal Bureau of Investigation subsequently opened an investigation into the false report.  (*Id.* ¶¶ 14–15.)  Consequently, Steele pulled out of the planned July 15 interview and sought to distance himself from Goodman.  (*Id.* ¶ 16.)  In response, Goodman, acting in "concert" with two other internet personalities, Susan Holmes and Negron, "began a[] . . . social media smear campaign against [Steele] and EIN that continues to this day."  (*Id.* ¶ 17.)  Over many months, Goodman, Holmes, and Negron repeatedly accused

---

citizens the possibility of an ethical, legal, non-violent restoration of integrity to the United States Government."  (*Id.* ¶ 3.)

[5] The plaintiffs assert that "[t]here is no way of knowing who, if anyone, donated money to EIN because of Goodman's live-stream," (*id.* ¶ 11), and that only one person who donated money on June 13, 2017 self-identified as from New York.

Steele of "felony charity fraud,"[6] "interstate wire fraud," theft, lying, and "abusive behaviors," and used Steele's name and image on doctored images, including CSTT merchandise. (ECF No. 25 ¶¶ 18–25, 45.) Goodman's actions allegedly damaged Steele's and EIN's reputations and caused personal donations to EIN to decrease by approximately $29,000 per month. (*Id.* ¶ 26.) The plaintiffs assert that "there was no basis in fact or law for any claim that [Steele] or EIN ha[ve] committed 'felony charity fraud," that Steele and EIN have never been investigated for or charged with criminal fraud, and that Goodman has "never reported [Steele] or EIN to the [New York] Attorney General or to any law enforcement agency or regulatory authority." (*Id.* ¶¶ 12–13.)

### B. *The Ensuing Legal Proceedings*

On September 1, 2017, Steele and EIN sued Goodman and others in the Richmond Division of this Court. (Civil Action No. 3:17cv601, ECF No. 1.) The complaint included claims of (1) defamation per se; (2) insulting words; (3) business conspiracy; (4) common law conspiracy; and (5) tortious interference. (*Id.*) On September 25, 2020, the Honorable M. Hannah Lauck dismissed the action without prejudice for Steele's and EIN's failure to comply with court directives, among other reasons. (Civil Action No. 3:17cv601, ECF No. 217.) During a hearing on July 27, 2020, Judge Lauck directed the plaintiffs that, if they refiled the case, they must do so in the Richmond Division of this Court. (*See* Civil Action No. 3:17cv601, ECF No. 215, at 97.) Ignoring this directive, three days later, Steele and EIN sued Goodman in the Alexandria Division of this Court. (Civil Action No. 3:21cv573, ECF No. 1.) Noting the similarities between this case and the previous case before Judge Lauck, the Honorable Rossie

---

[6] For example, Goodman contends that Steele committed fraud by accepting donations from Goodman's New York viewers because New York "require[s] all charitable organizations to register with the State Attorney General prior to making any solicitation." (ECF No. 27, at 3.)

Alston, Jr., ordered the case transferred to the Richmond Division on September 1, 2021. (ECF No. 12.)

Thereafter, this Court directed the plaintiffs to file an amended complaint complying with Federal Rule of Civil Procedure 8 and the Court's Local Rules. The Court warned the plaintiffs that failure to strictly adhere to the Court's directions would result in dismissal of the case with prejudice. (ECF No. 13, at 2.) In accordance with this Court's instructions, the plaintiffs filed their amended complaint on November 26, 2021. (ECF No. 25.) Goodman then filed his motion to dismiss. (ECF No. 26.)

## II. RELEVANT LAW

Goodman proceeds *pro se*. Accordingly, the Court gives his filings a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also LHF Prods., Inc. v. Fogg*, No. 1:16cv1050, 2017 WL 10978801, at *1 (M.D.N.C. June 30, 2017) (applying a liberal construction to *pro se* defendant's pleadings). Goodman's motion to dismiss appears to proceed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

### A. Rule 12(b)(2)

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

> If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. But when . . . the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading

allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

*Id.* (internal citations omitted).  The Court notes, however, that "[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; [a] plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (first alteration and emphasis in original) (quoting *Prod. Grp. Int'l v. Goldman,* 337 F. Supp. 2d 788, 793 n.2 (E.D. Va. 2004)).

### B. Rule 12(b)(6)

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A court must accept all allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  But this principal does not extend to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) motion, a complaint must state facts that state a claim to relief that is facially plausible. *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[A] motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein." *Brooks v. City of Winston-Salem,* 85 F.3d 178, 181 (4th Cir. 1996).  But "[a] court may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'" *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

6

## III. ANALYSIS

Goodman seeks the dismissal of the complaint in its entirety, as well as the dismissal of each individual claim.   As explained below, Goodman's arguments as to (1) personal jurisdiction; (2) the plaintiffs' alleged "abuse of process"; and (3) Claims One and Two lack merit.  Accordingly, the Court will deny his motion to dismiss on those grounds.  Because the Court agrees that the First Amendment shields Goodman's actions with respect to Claim Three, however, the Court will grant his motion and dismiss that claim.

### A.  *Grounds to Dismiss the Complaint*

Goodman argues that the Court should dismiss the entire complaint because (1) the Court lacks personal jurisdiction, and (2) the plaintiffs have committed an abuse of process.   Both arguments fail.

### 1.  *Lack of Jurisdiction*

Goodman first argues that this Court lacks personal jurisdiction over him.  Federal Rule of Civil Procedure 4(k)(1)(A) permits federal courts to "exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  "[F]or a district court to assert personal jurisdiction over a nonresident defendant, . . . (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*  The Fourth Circuit has recognized that:

> Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when Virginia is the forum state.  A Virginia court thus has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process.

7

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (internal citation omitted).

When a nonresident defendant uses the Internet to carry out the alleged misconduct, courts

> may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002); *see also Young v. New Haven Advoc.*, 315 F.3d 256, 263 (4th Cir. 2002) (noting that courts should consider the first two prongs together when the Internet activity involves posting on a website).

Goodman asserts that he "does not maintain minimum contacts with Virginia" and "does not specifically target Virginia in his broadcasting." (ECF No. 27, at 4.) The Court disagrees: the complaint alleges that Goodman directed his online activities into Virginia numerous times. For example, Goodman publicly revealed Steele's home address in Oakton, Virginia, to his YouTube followers and used Google Maps to show a photo of Steele's home. (ECF No. 28, at 8.) Moreover, Goodman's allegedly defamatory statements—including accusations that Steele engaged in fraud and theft—relate to an interview that occurred in Virginia and which Goodman aired live on his YouTube page. (ECF. No. 25 ¶ 9.) Goodman was also "physically present in Virginia on multiple occasions in connection with the production of YouTube videos at issue." (*Id.* ¶ 4.) Together, these acts created the instant causes of action for the plaintiffs—a Virginia resident and a Virginia non-profit. Thus, the Court finds that the plaintiffs have "ma[d]e a *prima*

*facie* showing of a sufficient jurisdictional basis," *Combs*, 886 F.2d at 676 (emphasis added), and will deny Goodman's Rule 12(b)(2) motion.[7]

### 2. Abuse of Process

Goodman next asserts that the plaintiffs have committed an "abuse of process" because they "defied . . . specific oral instructions" from the Court and brought this suit to "financially damage [Goodman] and burden him with ongoing litigation." (ECF No. 27, at 4–5.) Goodman asks the Court to dismiss the plaintiffs' complaint and to sanction the plaintiffs pursuant to Federal Rule of Civil Procedure 11(b)(1). Courts have "the power to order dismissal of an action for failure to comply with court orders." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989); *see* Fed. R. Civ. P. 41(b). Such dismissals fall entirely within the discretion of the district court. *Ballard*, 882 F.2d at 95–96.

The Court is not blind to the petty antagonism that pervades the case. Nevertheless, although the plaintiffs disregarded Judge Lauck's admonishment by refiling their suit in Alexandria, they have since complied with every order from this Court. When this Court directed the plaintiffs to file a death certificate for Steele, the plaintiffs did so within the prescribed timeframe. (*See* ECF Nos. 16, 17.) The plaintiffs also timely filed an amended, and more restrained, complaint as this Court instructed. (*See* ECF Nos. 24, 25.) The Court, therefore, declines to dismiss the plaintiffs' suit for failure to comply with court orders and will deny Goodman's request for sanctions.

The Court cautions *both* parties, however, that it will not tolerate any future deviations from its orders.

---

[7] The plaintiffs "must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp.*, 416 F.3d at 294 n.5 (quoting *Prod. Grp. Int'l*, 337 F. Supp. 2d at 793 n.2).
.

## B. *Grounds to Dismiss Claim One ("Defamation")*

Goodman moves to dismiss Claim One ("Defamation") on two grounds. First, Goodman argues that he made only truthful statements about Steele. Second, Goodman claims that the statute of limitations has expired. Neither argument has merit.

### *1. Truthful Statements*

"To state a claim for defamation under Virginia law, a plaintiff must plead three elements: '(1) publication of (2) an actionable statement with (3) the requisite intent.'"[8] *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (2018) (quoting *Schaecher v. Bouffault*, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015)). "To be 'actionable,' a statement must be 'both false and defamatory.'" *Id.* (quoting *Schaecher*, 290 Va. at 91, 772 S.E.2d at 594). "Therefore, truth is an absolute defense to defamation under Virginia law." *Gilmore v. Jones*, 339 F.R.D. 111, 121 (W.D. Va. 2021) (citing *Ebersole v. Kline-Perry*, 292 F.R.D. 316, 321 (E.D. Va. 2013) (finding substantial truth a defense to both defamation and business conspiracy)). "Statements of opinion—defined as statements that are 'relative in nature and depend largely upon the speaker's viewpoint'—are 'generally not actionable because such statements cannot be objectively characterized as true or false[.]'" *Gilmore v. Jones*, 370 F. Supp. 3d 630, 670 (W.D. Va. 2019) (quoting *Jordan v. Kollman*, 269 Va. 569, 576, 612 S.E.2d 203, 206 (Va. 2005)). Similarly, "'language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than 'rhetorical hyperbole,'" is not actionable." *Va. Citizens Def. League*, 910 F.3d at 784 (quoting *Yeagle v. Collegiate Times*, 255 Va. 293, 296, 497 S.E.2d 136, 137 (1998)). But, some

---

[8] The Court finds that by engaging publicly in discourse involving conspiracy theories and holding himself out as a counter-intelligence expert, Steele became a public figure, subject to commentary and scrutiny. Thus, because Steele was a public figure, the plaintiffs must also prove that Goodman made the allegedly defamatory statements with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

statements or words—which without context would present permissible hyperbole—may constitute actionable defamatory statements due to their context. *See Choi v. Kyu Chul Lee*, 312 F. App'x 551, 553 (4th Cir. 2009).

The Court "must decide as a threshold matter of law whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to a finder of fact," but, "when 'determining whether the words and statements complained of . . . are reasonably capable of the meaning ascribed to them by innuendo, [the Court must resolve] every fair inference that may be drawn from the pleadings . . . in the plaintiff's favor.'" *Va. Citizens Def. League*, 910 F.3d at 784 (first quoting *Schaecher*, 290 Va. at 94, 772 S.E.2d at 595; then quoting *Webb v. Virginia-Pilot Media Cos., LLC*, 287 Va. 84, 89, 752 S.E.2d 808, 811 (2014)).

The plaintiffs claim that Goodman repeatedly accused Steele of committing charity and interstate wire fraud and referred to him as a thief, a "robber . . . who steals", and a fraud. (ECF No. 25 ¶ 18(d).) The plaintiffs also claim that Goodman insulted Steele's intelligence and maligned his character by accusing him of lying about his accomplishments, "co-opt[ing]" the credibility of others, including former United States representative Cynthia McKinney, and being generally deceitful. (*See, e.g.*, *id.* ¶ 18(i).) Here, the Court finds that Goodman's assertions that Steele committed actual criminal fraud could be statements of fact. Similarly, the Court finds that Goodman's statements that Steele stole or otherwise perpetrated scams, cons, and fraud, could constitute statements of facts when considered in the context of Goodman's criminal accusations. *See Choi*, 312 F. App'x at 553.

Finally, the Court finds that any statements concerning Steele's intelligence, accomplishments, or general trustworthiness are nonactionable statements of opinion.[9] (*See,*

---

[9] The plaintiffs assert that Goodman originally began making such statements "[b]etween

*e.g.*, *id.* 25 ¶ 18(i) (expressing disbelief that Steel worked for the Central Intelligence Agency because he seems "stupid"); *id.* ¶ 20(d) (stating that "RDS is a disinfo agent" and "a very nasty person"); *id.* ¶ 22(a) (inferring that Steele was "lying about things constantly").)

Notably, Goodman does not assert that his statements, even if false, were non-actionable opinions or otherwise non-defamatory. Rather, Goodman asserts that because he spoke only the truth, he cannot be liable for defamation. Although there exist "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, [and an affirmative] defense may be reached by a motion to dismiss filed under Rule 12(b)(6)[, t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (alteration and emphasis in the original)). That is not the case here. Goodman's assertions of truth—unsupported by any evidence or clear argument—cannot prevail at this stage because the Court is bound to accept all well-pleaded allegations in the plaintiffs' complaint. The plaintiffs assert that Steele did not engage in charitable fundraising efforts in New York and that Goodman has previously admitted that *he* solicited donations from his viewers—in and out of New York—during the June 13, 2017, interview. (ECF No. 25 ¶ 34.) A natural inference is that Goodman

---

June 15, 2017 and August 30, 2017." (ECF No. 25 ¶ 18.) Steele sued Goodman in September 2017, thereby alerting Goodman to the fact that the plaintiffs believed such statements were both false and defamatory. After that point, Goodman, Holmes and Negron continued publishing videos which accused Steele of committing charity fraud, including one where Goodman stated that he "ha[s] evidence that [Steele had] committed charity fraud." (*Id.* at ¶ 22(c).) The Court notes, however, that many of the statements identified in the complaint do not clearly state (1) precisely who the speaker was, or (2) exactly when he or she made the statement. Accordingly, although the Court will deny Goodman's motion to dismiss Claim One, the Court will require the plaintiffs to file a particularized list of the actionable statements alleged in the complaint. The Court will then limit the plaintiffs' defamation claims to those statements, made by Goodman, that accuse Steele of actual criminal conduct or related behavior, i.e., theft and fraud, running financial scams, or being a conman.

knew his statements to the contrary were false and that he made those statements to harass Steele and injure his reputation by proffering conspiracy theories as facts and otherwise leading his many viewers to believe Steele was engaging in criminal activity. The plaintiffs assert that Steele and EIN acted in accordance with all applicable rules regarding charitable fundraising. Further, the plaintiffs allege that Goodman knew or should have known that Steele and EIN did not engage in criminal fraud as evidenced by the fact that Goodman has made no effort to report such activity to any relevant authority. (*Id.*) Accordingly, the Court finds that the plaintiffs assert sufficient facts to survive Goodman's motion to dismiss as to Claim One.

### 2. Statute of Limitations

Goodman also argues that Virginia's one-year statute of limitations bars the plaintiffs' defamation claim. Pursuant to Va. Code § 8.01-247.1, plaintiffs must bring defamation suits within one year after the cause of action accrues. A defamation action accrues the moment the defendant utters the allegedly defamatory remarks. *Jordan v. Shands*, 255 Va. 492, 498, 500 S.E.2d 215, 218 (1998). When a plaintiff sues within the prescribed limitation period, the court must toll the statute of limitations while such action pends. Va. Code Ann. § 8.01-229(E)(1). If the court later dismisses that suit without prejudice, the plaintiff may bring "another action . . . within the remaining period." *Id.*

Here, the plaintiffs contend that Goodman defamed Steele as early as June 15, 2017 and as recently as November 21, 2018.[10] The plaintiffs originally sued Goodman on September 1, 2017. (Civil No. 3:17cv601, ECF No. 1.) The statute of limitations then tolled from that moment until Judge Lauck dismissed the plaintiffs' suit on September 25, 2020. (*Id.*, ECF No.

---

[10] Although the plaintiffs claim that Goodman continued to make defamatory statements about Steele even after Steele's death, November 21, 2018, constitutes the latest identifiable date of Goodman's defamatory actions in the complaint. (ECF No. 25 ¶¶ 23–24.)

217.)  Three days later, the plaintiffs refiled their suit in Alexandria.  (Civil No. 3:21cv573, ECF No. 1.)  When coupling this three-day period with the initial three-and-a-half-month period, less than four months have accumulated against the statute of limitations.  Thus, the statute of limitations has not expired against the plaintiffs' defamation claim.

Because Goodman's defense of truth is not properly before the Court, and the statute of limitations does not bar the plaintiff's defamation claim, the Court will deny Goodman's motion to dismiss Claim One.

### C.  Grounds to Dismiss Claim Two ("Business Conspiracy")

Goodman moves to dismiss Claim Two ("Business Conspiracy") on three grounds.  First, Goodman contends that the plaintiffs have not plausibly pleaded facts demonstrating the existence of a business conspiracy.  Second, Goodman argues that he did not conspire with Holmes and Negron.  Finally, Goodman again asserts that the statute of limitations has expired. All three arguments fail.

### 1.  Failure to Plead a Claim

Goodman says that the Court should dismiss Claim Two "because the requisite underlying cause of action is deficient."  (ECF No. 27, at 5.)  The Court construes Goodman's motion to argue that the plaintiffs fail to sufficiently plead the existence of a business conspiracy.

Section 18.2-500 of the Virginia Code "provide[s] civil relief, including treble damages, for persons 'injured in his reputation, trade, business or profession by reason of a violation  of § 18.2-499.'"  *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 214, 754 S.E.2d 313, 317 (2014).  Thus, to prove a business conspiracy under §§ 18.2-499–500, "a plaintiff must establish: '(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his [reputation, trade, business or profession;] and (2) resulting damage to

plaintiff.'" *Id.* at 214, 754 S.E.2d at 317 (quoting *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984)). Taking the allegations in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor, the Court concludes that the plaintiffs sufficiently allege the existence of a business conspiracy.

The plaintiffs identify specific individuals, including Negron and Holmes, with whom Goodman allegedly conspired. (ECF No. 25 ¶ 37.) Moreover, the plaintiffs describe the purpose of Goodman's alleged conspiracy as an effort to damage Steele's and EIN's reputations as retribution for Steele seeking to distance himself from Goodman. (*Id.* ¶¶ 16, 37.) The plaintiffs also identify how Goodman carried out this conspiracy, including use of email, text messsages, and social media to repeatedly and intentionally defame Steele. (*Id.* ¶ 37.) *See also Ebersole*, 292 F.R.D. at 321. Finally, the plaintiffs allege that the conspiracy injured Steele's reputation and caused a significant decrease in donations to EIN. Thus, the plaintiffs satisfy the pleading requirements for their business conspiracy claim.

### 2. No Conspiracy with Others

Goodman next argues that no conspiracy existed between himself, Negron, and Holmes. Instead, Goodman contends that Steele "enticed these individuals to gain [Goodman's] trust and deliberately say things they hoped would give rise to a cause of action." (ECF No. 27, at 6.) At this stage in the litigation, the Court is bound to accept all well-pleaded allegations in the complaint as true. Because the Court finds that the plaintiffs have plausibly pleaded a claim for business conspiracy, it declines to address Goodman's assertions that he did not, in fact, conspire with others to defame Steele. *See Miller v. Stratford House Retirement Community*, No. 4:12cr6, 2012 WL 1414850, *4 (W.D. Va. Apr. 24, 2012) (noting that "in a 12(b)(6) motion . . . there is a presumption reserving the truth finding role to the ultimate factfinder"). Goodman may properly

assert such denials in a responsive pleading pursuant to Fed. R. Civ. P. 8(b).

### 3. *Statute of Limitations*

Goodman also contends that the statute of limitations has expired on the plaintiffs' business conspiracy claim. A cause of action under Virginia Code §§ 18.2-499–500 accrues only once the plaintiff suffers an injury, *L-3 Comms. Corp. v. Serco, Inc.*, 926 F.3d 85, 93 (4th Cir. 2019), and a five-year statute of limitations applies to such actions, *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 543 (4th Cir. 1997) (citing Va. Code Ann. § 8.01-243); *see also* Va. Code Ann. § 8.01-243(B) ("Every action for injury to property . . . shall be brought within five years after the cause of action accrues."); *Andrews v. Ring*, 266 Va. 311, 319, 585 S.E.2d 780, 784 (2003) ("We conclude that the origin of Code §§ 18.2-499 and -500 establishes that they apply to business and property interests.").

Here, the plaintiffs assert that Goodman conspired with Negron and Holmes beginning in June 2017. (ECF No. 25 ¶ 37.) The plaintiffs also state that the alleged conspiracy caused Steele and EIN to suffer "defamation and character assassination," thereby constituting the injury that begins the accrual period. (*Id.*) Five years did not elapse between when the conspiracy began in June 2017 and when the plaintiffs re-filed their suit in Alexandria in September 2020. (*Id.*; *see also* ECF No. 1.) Thus, the statute of limitations for the plaintiffs' business conspiracy claim has not expired.

All of Goodman's arguments as to Claim Two fail. Accordingly, the Court will deny Goodman's motion to dismiss Claim Two.

### D. *Grounds to Dismiss Claim Three ("Unauthorized Use of Name and Picture")*

Finally, Goodman moves to dismiss Claim Three ("Unauthorized Use of Name and Picture"). Goodman argues that pursuant to Steele's role as a limited-purpose public figure,

16

Goodman may use Steele's name and picture for parody purposes. Further, he says that his "use of [Steele's] name and image were done in the course of news reporting and commentary and in presenting true and correct facts pertaining to allegations of criminal activity and other actions by [Steele]." (ECF No. 27, at 7.)

> Section 8.01-40(A) of the Virginia Code provides that:
>
> Any person whose name, portrait, or picture is used without having first obtained the written consent of such person, . . . for advertising purposes or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use.

The plaintiffs assert that Goodman violated § 8.01-40 by publishing videos and selling merchandise on the website Red Bubble that depicted Steele's face on the hind end of an animal and on a cartoon body. (ECF No. 25 ¶¶ 45 (referring to Steele as "a dummy" and "such a loser").) The Court finds that Goodman's creations, while repugnant, are parody images protected by the First Amendment. *See Hustler Mag., Inc., v. Falwell*, 485 U.S. 46, 48 (1988) (finding that the First Amendment protected a parody advertisement which included "the name and picture" of the plaintiff along with an "alleged interview' . . . in which he state[d] that his 'first time' was during a drunken incestuous rendezvous with his mother in an outhouse"). Accordingly, the Court will grant Goodman's motion as to Claim Three. Nevertheless, the Court cautions Goodman that he walks a thin line and that although the First Amendment may shield his art from scrutiny, this conclusion is not an invitation to repackage false and defamatory statements under the guise of parody.

### III. CONCLUSION

The Court declines to dismiss the complaint in its entirety because the plaintiffs present a *prima facie* showing that Court has jurisdiction over Goodman, and the plaintiffs have not

committed an abuse of process. As to the dismissal of the individual claims, the Court finds that the plaintiffs' claims are timely, that the plaintiffs have sufficiently pleaded claims for defamation and business conspiracy, and that Goodman's various denials and defenses as to Claims One and Two are not properly before the Court at this stage of the proceedings. Accordingly, the Court will deny Goodman's motion as to those claims. (ECF No. 26.)

The Court further finds that the First Amendment protects Goodman's use of Steele's name and likeness for the purpose of creating parody images. Accordingly, the Court will grant Goodman's motion as to Claim Three.

It is so ORDERED.

Let the Clerk mail a copy of this Memorandum Order to all counsel of record and the *pro se* defendant.

Date: 15 September 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

18